**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.V.**

**No. 21-1014** (Boone County 19-JA-167)

**MEMORANDUM DECISION**

Petitioner Father J.V., by counsel J. Alexander Meade, appeals the Circuit Court of Boone County's November 17, 2021, order terminating his parental rights to R.V.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Allison K. Huson, filed a response on behalf of the children in support of the circuit court's order. The child's intervening foster parent, B.W., by counsel Steven M. Thorne, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and in terminating his parental rights upon insufficient findings of fact.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The proceedings began in December of 2019, when the child's mother tested positive for amphetamine, methamphetamine, and THC upon giving birth to the child that same month. The petition indicated that it was unclear if petitioner "plans to be involved," given that he was incarcerated at the time. After the court was informed that petitioner was not listed on the child's birth certificate, it granted his motion for paternity testing at a hearing in January of 2020. In the interim, petitioner was released from incarceration and submitted to drug screens.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

According to the record, petitioner's paternity testing was delayed as a result of the COVID-19 pandemic. Ultimately, at a November of 2020 hearing, the court acknowledged receipt of petitioner's paternity results establishing that he was the child's father. At that same hearing, the court terminated the mother's parental rights. The court then ordered the DHHR to perform a home study of petitioner's residence and determine if placement of the child in his custody was appropriate. The court further ordered that petitioner could have no contact with the mother as a result of the termination of her parental rights. However, the DHHR provided a status summary the following month in which it indicated that petitioner was currently incarcerated for a parole violation; his home was inappropriate; he failed drug screens; and he was alleged to be in a relationship with the mother, despite the termination of her parental rights.

In December of 2020, the DHHR filed an amended petition to include allegations against petitioner, including that he tested positive for amphetamine, methamphetamine, MDMA, and buprenorphine multiple times between June and November of 2020, despite being on parole. According to the record, petitioner did not provide a valid prescription for the buprenorphine. While on parole, petitioner also violated curfew and left the permitted area of supervision. According to the DHHR, petitioner was required to serve thirty days in jail for his parole violations. The DHHR also alleged that petitioner was unable to provide them with a residence for the DHHR to inspect and was, therefore, unable to provide the child with a stable living environment. According to the DHHR, petitioner was married to the child's mother.

The adjudicatory hearing was then continued several times, including once in May of 2021 because petitioner was again arrested and placed in jail. Ultimately, the adjudicatory hearing took place in June of 2021, during which the DHHR presented evidence that petitioner had multiple failed drug screens for several different controlled substances. The court found that petitioner had never had any contact with the child. Based on the foregoing, the court concluded that petitioner had abandoned the child and that his substance abuse impaired his ability to properly parent. As such, the court adjudicated petitioner of abusing and neglecting the child.

The record shows that, during the proceedings, petitioner and the mother gave birth to a second child, D.V., that is not at issue in the current appeal, although the DHHR did file a separate petition in regard to that child.[2] At a hearing in September of 2021, petitioner remained incarcerated, although he believed he would be paroled in March of 2022. During the hearing, the court "announced that it was its intention to grant [petitioner] a post-adjudicatory improvement period in" cases involving R.V. and D.V. According to the court, it "believe[d] this will put [petitioner] on the same track, so to speak, in both cases." However, R.V.'s foster parent, who had previously intervened in the proceedings, objected to petitioner being granted an improvement period in regard to R.V. Given that the child had been in the DHHR's custody since 2019, the intervenor argued that further continuances in R.V.'s case were not in the child's best interest. Counsel for petitioner argued that it was contradictory to grant an improvement period in one case and not in the other, so the court held the matter in abeyance and required the parties to submit memoranda in support of their positions.

---

[2]The proceedings regarding D.V. remained ongoing at the time petitioner filed his appeal. As such, petitioner raises no assignment of error in relation to that child.

The matter ultimately came on for a dispositional hearing in November of 2021. Petitioner was still incarcerated at this time. Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because he was habitually addicted to drugs such that his parenting skills were seriously impaired and that he failed to follow through with or respond to the recommended and appropriate treatment. The court further found that petitioner's drug use led to his repeated incarcerations throughout the proceedings and resulted in his inability to participate in any meaningful way in an improvement period. The court also found that reunification with petitioner was not in the child's best interest due to petitioner's continued lack of participation. Finally, the court found that separating the child from his sibling was in the child's best interest because it would achieve permanent placement for him. Accordingly, the court terminated petitioner's parental rights to R.V.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises two assignments of error, both of which are predicated on his assertion that denial of an improvement period and termination of his parental rights to R.V. were inconsistent with the lower court's award of an improvement period in regard to his other child, D.V., who is not at issue in this appeal. In essence, petitioner argues that the circuit court could not make differing rulings regarding the two children. We do not agree.

Petitioner's arguments on appeal ignore the reality that the two children in the proceedings below were in drastically different positions at the time the court denied petitioner's motion for an improvement period and terminated his rights to R.V. According to the record, R.V. had been in foster care since approximately December of 2019—almost two years. D.V., however, was only four months old at the time of R.V.'s disposition. Accordingly, the same considerations did not apply equally to both children, and any argument petitioner advances on appeal based on his belief

---

[3]The mother's parental rights were also terminated. The permanency plan for the child is adoption in the current foster home.

that the court could not make different rulings concerning the two children does not entitle him to relief.

In regard to R.V., the intervenor correctly argued that an improvement period for petitioner would not be in the child's best interests, as further delays would not be beneficial to the child. Indeed, West Virginia Code § 49-4-610(9) provides that

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

The record here shows that, by disposition, the child had been in foster care well in excess of this timeframe. While it is true that the petition against petitioner was only pending for approximately one year, the fact remains that even before the DHHR included specific allegations against petitioner in the amended petition from December of 2020, he was unable to accept custody of the child. Indeed, petitioner took no steps to establish his parentage of the child prior to the proceedings, continued to abuse drugs after the child was removed from the mother, and was incarcerated several times subsequent to the child's birth for violating the terms of his parole. Accordingly, we agree with the circuit court that further delay in achieving permanency for the child was contrary to his best interests and conclude that the circuit court did not abuse its discretion in denying petitioner's motion for an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

On appeal, petitioner argues that the circuit court erred in finding that he failed to participate in services and did not follow through with the recommended and appropriate treatment. He alleges that no evidence was introduced to support these findings and that the DHHR, in fact, did not offer him services. This is not accurate, as the record shows that petitioner was required to drug screen and failed to fully cooperate with this service by continuing to abuse drugs and providing positive screens. It is also important to note that petitioner was expressly instructed that, if he wished to obtain custody of the child, he could not continue his relationship with the child's mother after her parental rights were terminated. Despite this express prohibition, petitioner not only continued his relationship with the mother, but he also fathered another child with her. Further, the record shows that although petitioner was enrolled in a substance abuse treatment program in September of 2021, there is no evidence that he completed that program or would have completed it in a reasonable time such that the conditions of abuse and neglect would have been corrected. As such, we conclude that the circuit court did not err in making these findings.

Finally, petitioner argues that the circuit court erred in terminating his parental rights. In support of this assignment of error, petitioner incorporates his argument concerning the denial of an improvement period. Because we found those arguments unavailing, as set forth above, petitioner cannot be entitled to relief in regard to the termination of his parental rights based upon

them either. Further, petitioner's reliance on West Virginia Code § 49-4-111(e)(2)[4] is similarly misplaced. In fact, petitioner acknowledges that this statute has no bearing on the termination of his parental rights by admitting that it applies only to foster care placements. Nonetheless, petitioner argues that "in terminating the parental rights of the [p]etitioner the circuit court has created circumstances that have necessitated permanency planning wherein one sibling (D.V.) is proceeding with a primary plan of reunification with the [p]etitioner, whereas the other (R.V.) proceeds toward adoption." Petitioner has cited no authority that would require the circuit court to permit him to retain custody of R.V. simply because the court has not also terminated his parental rights to another child. While petitioner argues that the circuit court has created a circumstance in which the siblings must be separated, he ignores the fact that it was his continued drug use, criminal conduct, and failure to remedy the conditions of abuse and neglect that necessitated the termination of his parental rights to R.V.

Based on the evidence, the circuit court concluded that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because he was habitually addicted to drugs such that his parenting skills were seriously impaired and that he failed to follow through with or respond to the recommended and appropriate treatment. According to West Virginia Code §§ 49-4-604(d)(1) and (3), these circumstances constitute situations in which there is no reasonable likelihood that conditions of abuse and neglect can be substantially corrected. Because there was ample evidence upon which to base these findings, we conclude that they were not in error.

Further, petitioner argues that "nothing on the record indicates that R.V.'s right to continued contact with D.V. was ever considered," but this argument misstates the record. First, the guardian and the intervening foster parent indicate that D.V. was placed in the same foster home as R.V. during the proceedings below, thereby ensuring that the siblings were permitted contact in the short term. Further, as the proceedings regarding D.V. remained ongoing at the time the parties filed briefs in this matter, the ultimate issue of whether the court should order ongoing sibling visitation between the children is not yet ripe for our consideration. *See* Syl., *State v. J.C.*, 241 W. Va. 712, 828 S.E.2d 100 (2019) ("[A]bstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court."). Further, petitioner ignores the fact that the circuit court specifically found that legally separating the siblings was in R.V.'s best interests because it allowed the child to achieve permanency. We agree and reject petitioner's contention that R.V. should have been required to further languish in uncertainty simply because proceedings regarding petitioner's second child remained ongoing.

---

[4]According to that statute,

[i]f the department is of the opinion based upon available evidence that residing in the same home would have a harmful physical, mental or psychological effect on one or more of the sibling children or if the child has a physical or mental disability which the existing foster home can better accommodate, or if the department can document that the reunification of the siblings would not be in the best interest of one or all of the children, the department may petition the circuit court for an order allowing the separation of the siblings to continue.

According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. As set forth above, the circuit court had ample evidence upon which to base these findings. Further, we have also explained as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 17, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn